On January 20, 1938, the Andress Motor Company, Incorporated, of Minden, Louisiana, sold to Etsol D. Ashley, a Ford Tudor sedan for a consideration of $249.72 cash and deferred payments aggregating $692.10, payable at the rate of $38.45 per month for 18 consecutive months, beginning February 25, 1938. To secure these payments a chattel mortgage was given by Ashley to Andress Motor Company, Inc., which in turn transferred the 18 notes to the Universal Credit Company with its guaranty of payment. The chattel mortgage was duly recorded in Webster Parish, Louisiana, the domicile of both Andress Motor Company, Inc., and Ashley.
Three of the monthly payments were paid by Ashley and on the 27th day of May, 1938, he transferred the car to W.A. Owens, a resident of Claiborne Parish, Louisiana, with the full consent of the Universal Credit Company, the owner of the notes, as is shown by the following instrument of transfer:
 "Transfer of Equity
Shreveport, Louisiana.
"Know All Men by These Presents, That (Original Purchaser) Etsol D. Ashley, party of the First part, having purchased the following described property, to-wit:
 New or Type Make or Model. No. Ser. Motor
 Used Body Trade Name No. Number.
 ----- ----- ---------- ------ --- ---- -----------
One New Tudor Ford 18-4404242
 ----- ----- ---------- ------ --- ---- -----------

from _________ Andress Motors Co. Inc., Minden, La. (Original seller), title to which property is now vested in Universal Credit Company, party of the second part, through the purchase of a document terms a ______ Mortgage ______ bearing number 11742, *Page 44 
signed by the party of the first part, and assigned and guaranteed by the aforementioned seller, hereby, in consideration of $ ______ 1.00 ______ transfers his equity in the above property to W.A. Owens (Transferee) party of the third part.
"The party of the third part, in consideration of said transfer, agreed to by the party of the second part, agrees to assume all obligations and abide by all covenants embodied in the aforesaid document, the terms of which are clearly understood. The party of the third part understands that legal title will not pass from Universal Credit Company or its assignee to either the party of the first part or the party of the third part until the final installment of the purchase price has been paid and the document is duly cancelled.
"Party of the first part understands that he is not released from any obligation whatsoever under the aforementioned document, and in the event that the party of the third part fails to keep up payment of the installments as they mature, the party of the first part is bound to make payments immediately as called for by the contract.
"The payments still to be made under the contract are as follows:
38.45 due 7-1 1938 $38.45 due 1-1 1939 38.45 due 8-1 1938 38.45 due 2-1 1939 38.45 due 9-1 1938 38.45 due 3-1 1939 38.45 due 10-1 1938 38.45 due 4-1 1939 38.45 due 11-1 1938 38.45 due 5-1 1939 38.45 due 12-1 1938 38.45 due 6-1 1939 38.45 due 7-1 1939 38.45 due 8-1 1939 38.45 due 9-1 1939
"It is understood that payments are due and payable on the aforementioned dates to Universal Credit Company at ______ 610 Edwards Street, Shreveport, Louisiana ___
"Furthermore, the party of the first part does hereby authorize the party of the second part to have transferred to the party of the third part such Fire and Theft and other insurance as may be in force and hereby agrees to deliver to the party of the third part such policy or policies and/or contract or contracts of insurance. Also, the party of the third part agrees that in the event the Insurance Company carrying the aforesaid insurance does not desire to extend its contract; he, (the party of the third part) will procure acceptable Fire and Theft insurance from a company satisfactory to the party of the second part, with loss payable clause in favor of the party of the second part.
"Witness the hands and seals of the parties this ______ 27th ______ day of ______ May ______ 1938 ______________________.
Witnesses:
Name ___ Leon W. Adkins ________ Etsol D. Ashley ________ (L.S.) (Party of First Part) Address ___ Minden, La. By ______________________________ Universal Credit Company. (L.S.) (Party of Second Part) Name ___ V.G. Johnson By _______ W.M. De Wen (?) ______ Address _____________ ___________ W.A. Owens __________ (L.S.) (Party of Third Part) By _____________________________________ _____________________ (To be filled in by UCC Branch)
W.A. Owens ____ Transferee Approval of Original Seller _____ Homer, Claiborne The transfer of the equity by County, Louisiana __________ the aforementioned contract is Occupation ____ Salesman satisfactory to me (us), as ____ Employer's Name _____ guarantor of above mentioned Mutual Benefit Health instrument, and I (we) consent Accident ____ Employer's to and recommend same. Address ____ S'Port, La. ____ Andress Motors Co. Inc. ___ (L.S.) Use to Which Car Will Be Put By ______ H.C. Andress _______". ____ B P ____ Location of Garage ______
Noted and Handled By ______________ Date __________ *Page 45 
This instrument was not recorded in either Webster or Claiborne Parish.
On June 6, 1939, L.F. Holley obtained judgment in the district court of Claiborne Parish, Louisiana, against W.A. Owens in the sum of $1,174. After this judgment became final Holley had issued a fieri facias and the sheriff seized the automobile in Caddo Parish, Louisiana, where Owens had taken it and the car was advertised for sale to satisfy the judgment held by Holley.
Universal Credit Company then filed an intervention alleging that Owens had paid all installments on the car as they became due up to and including the installment note due June 1, 1939; that he failed to pay the installment due July 1, 1939, and it had exercised its option of declaring all remaining notes or installments presently due and exigible; that the balance due is $346.50, with interest on $31.50 from July 1, 1939, until July 3, 1939, and with interest on $346.50 from July 3, 1939, until paid and 15% additional on such amounts as attorney's fees.
It set out the transaction whereby Ashley purchased the car and gave the mortgage and alleged that he later assigned his equity in the car to W.A. Owens. It claimed a preference and priority on the proceeds to be derived from the sale under the fieri facias issued by Holley by reason of the original chattel mortgage recorded against Ashley in Webster Parish, Louisiana. It admitted that the instrument whereby Owens acquired the car was not recorded in Claiborne Parish, the domicile of Owens.
The mortgage executed by Ashley to the Andress Motor Company, Inc., does not purport to be a notarial act but to be a private act executed before two witnesses and duly acknowledged before a notary public by one of said witnesses.
Defendant in reconvention, hereafter referred to as defendant, attacks the said mortgage as not being authentic or confected in accordance with the provisions of Act No. 178 of 1936, which amends Section 2 as amended by Act No. 189 of 1932; and Sections 4 and 5 of Act No. 198 of 1918, as amended by Act No. 81 of 1922 and Act No. 232 of 1924 and, therefore, can have no effect on third persons without notice.
Defendant further contends that intervenor's failure to record the instrument whereby the car was transferred from Ashley to Owens, which instrument is quoted in full above, deprived it of any right or preference against or over a third person without notice. It is admitted that defendant was without notice of either of the transactions of sale and assignment. Defendant also denied that Owens was indebted unto intervenor in any amount.
The lower court awarded judgment for intervenor as prayed for, recognizing its privilege on the proceeds derived from the sale of the car and ordered the sheriff to pay over to it the funds derived therefrom in preference and with priority over all other claims, and especially the claim of defendant herein. Defendant is now prosecuting this appeal.
Intervenor claims in its petition that there is a balance due of $346.50 under the chattel mortgage. It also alleged that Owens had made all payments as they became due until July 1, 1939. According to the chattel mortgage and notes, there were only three payments of $38.45 each due on and after that date, which would have made a total of $115.35, however, defendant, by stipulation during the trial of the case has admitted the correctness of the amount claimed by intervenor and that it is the balance due under the chattel mortgage and dispensed with proof thereon.
We are at a loss to know what the difference between $115.35 and $346.50 consisted of. Clearly it is not due under the pleadings and chattel mortgage attached thereto. However, since defendant admitted it, we feel sure it must be due and the pleadings must have been erroneous and allowed to be corrected by the admission, but there is nothing in the record to justify such an assumption by us.
Defendant's attack on the authenticity of the chattel mortgage executed by Ashley is levelled at the witnesses whose signatures appear thereon. It is defendant's contention that they were not present and did not witness Ashley sign the instrument. H.C. Andress, manager of the mortgagee corporation, and the witness, Miss Deloney, both testified that Miss Deloney was present and saw Ashley sign the document. Ashley, whose interest was to have intervenor recover in this suit for the reason he has made himself at least the guarantor of Owens and promised to pay the notes if Owens did not, testified that no one other than H.C. Andress was present when the mortgage was executed by him and that never until the day of trial had *Page 46 
he seen Miss Deloney. Ashley further testified that the other witness, C.S. Adkins, was not present when he executed the instrument. No evidence was offered by intervenor to contradict this testimony, therefore, under the testimony, it is clear that the acknowledgment made by Miss Deloney before the Notary wherein she deposes and says that she saw the mortgage executed by the mortgagor in the presence of both the witnesses is incorrect.
Section 2 of Act No. 178 of 1936 provides in part as follows: "In order to affect third persons * * * said instrument must be passed by notarial act, or by private act duly acknowledged by one of the parties thereto, or by a subscribing witness thereto, before a Notary Public * * *."
A private act is good as between the parties thereto without any witnesses and the above-quoted provision of Act No. 178 of 1936 makes it good and binding as to third persons if one witness duly acknowledged it before a notary public. Therefore, if we find that the acknowledging witness was actually at the execution of the instrument, it would seem to meet the requirements of the Act. The lower court found this to be a fact and under the testimony we would not be justified in disagreeing with it.
The second contention made by defendant presents a rather novel and new question for determination: Was it necessary for intervenor to have had recorded in Claiborne Parish, Louisiana, the domicile of Owens, the instrument by which Owens assumed the indebtedness of Ashley under the original chattel mortgage, which instrument is quoted in full above?
This instrument, dated May 27, 1938, transfers the automobile from Ashley to Owens and Owens agreed to pay the balance due as represented by the mortgage and assume the mortgage. By this act he became the mortgagor and the Andress Motor Company, Inc., the mortgagee. There was a change of ownership of the automobile and a change of mortgagor with the written consent of the mortgagee and the intervenor herein, the holder of the notes and contract in due course. It is true that the original mortgagor in this document bound himself to pay if the new mortgagor, Owens, did not. The instrument not only changed the ownership of the car and substituted a new mortgagor for the original one, but it also changed the due date of the fifteen remaining monthly payments from the 25th day of each month to the 1st of each month. The instrument on its face shows that the substituted mortgagor was a resident of Claiborne Parish, Louisiana, and the original mortgagor a resident of Webster Parish, Louisiana.
When the above instrument was executed, Owens became the mortgagor just the same as if a new mortgage had been drawn and executed by Owens to the seller or holder of the notes, and the instrument takes the place of a new mortgage and, in our opinion, is governed by the provisions of Section 2 of Act No. 178 of 1936 and, therefore, to have been effective against third persons without notice, it was necessary that it be recorded in Webster Parish, Louisiana, where the sale took place and in Claiborne Parish, Louisiana, the domicile of the purchaser and mortgagor. This was not done.
It therefore follows that the judgment of the lower court is erroneous and it is now reversed and the demands of intervenor are rejected at its costs in both courts. *Page 197